**GREENBERG TRAURIG, LLP**
**ATTORNEYS AT LAW**
**SUITE 700**
**2375 EAST CAMELBACK ROAD**
**PHOENIX, ARIZONA 85016**
**(602) 445-8000**

Nicole M. Goodwin, SBN 024593, goodwinn@gtlaw.com
Aaron T. Lloyd, SBN 027987, lloyda@gtlaw.com

GREENBERG TRAURIG, LLP
James N. Boudreau (*pro hac vice* application forthcoming)
Justin Victor (*pro hac vice* application forthcoming)
1717 Arch St., Suite 400
Philadelphia, PA 19103
(T): 215 988-7800
(F): 215 988-7801

*Attorneys for Plaintiff BioClinica, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BioClinica, Inc., | Case No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES** |
| Imaging Endpoints II, LLC, Catalina Ocolisan, and Ami Marano, | |
| Defendants. | |

## I.  NATURE OF THE ACTION

This action arises from Defendant Imaging Endpoints II, LLC's ("Defendant Imaging Endpoints") ongoing and calculated recruitment and hiring of Plaintiff BioClinica, Inc. ("BioClinica" or the "Company") employees for the express purpose of gaining knowledge and insight into BioClinica's confidential and proprietary business practices in an effort to gain an undeserved foothold in the clinical trial support industry.

BioClinica and Imaging Endpoints are competitors. Both provide clients with clinical trial resources, such as medical imaging services and clinical trial management, with the aim of accelerating the development of new drugs and medical therapies.

Although there is a clear and undeniable overlap in the services the two companies provide, Imaging Endpoints is a smaller and relatively recent player in the medical imaging space. BioClinica, by contrast, is an industry-leader. BioClinica attributes its success, in substantial part, to its proprietary and confidential information, software, and documents that Imaging Endpoints is apparently trying to misappropriate.

To protect the confidential and proprietary nature of its materials, BioClinica requires employees to sign restrictive covenant agreements as a condition of employment. These restrictive covenants, while valid and enforceable, have not deterred Imaging Endpoints from recruiting and/or hiring BioClinica employees in clear violation of their contractual obligations to BioClinica, including, but not limited to, Defendants Catalina Ocolisan ("Ms. Ocolisan"), and Ami Marano ("Ms. Marano, collectively with "Ocolisan" the "Former Employee Defendants").

Indeed, since 2018, and with full knowledge that BioClinica employees are party to restrictive covenants, Imaging Endpoints, has strategically recruited and hired no less than seven BioClinica employees, some of whom worked in positions virtually identical to those they held with BioClinica. By hiring numerous individuals who are collectively responsible for overseeing client relationships and day-to-day project management, which includes creating, maintaining, and preparing proprietary documents to support the clinical trial process, Imaging Endpoints has positioned itself to replicate BioClinica's exact manner of servicing clients – all while blatantly disregarding and tortiously interfering with the employees' restrictive covenants.

Based on the foregoing, BioClinica asserts claims for breach of contract against the Former Employee Defendants and tortious interference with contract and unfair competition against Imaging Endpoints.

**II.     THE PARTIES**

1.     BioClinica is incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.

2

*44573010*

2. Defendant Imaging Endpoints II, LLC is incorporated under the laws of the Arizona with its principal place of business in Arizona. IE Holdings, LLC is an Arizona limited liability company and sole Member of Imaging Endpoints II, LLC.

3. Based upon information and belief, Defendant Catalina Ocolisan is a resident and citizen of Pennsylvania.

4. Based on information and belief, Defendant Ami Marano is a resident and a citizen of Oregon.

5. Based on information and belief, as employees of Defendant Imaging Endpoints, the Former Employee Defendants conduct business in Arizona and routinely direct phone calls and emails to persons who work at Defendant Imaging Endpoints' Scottsdale, Arizona headquarters.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this district under 28 U.S.C. § 1391 because Defendants have each transacted business in the State of Arizona and a substantial part of the events giving rise to the claims occurred in the State of Arizona.

## IV. FACTUAL ALLEGATIONS

8. BioClinica is a leader in scientifically-driven services and technology-enabled solutions in clinical research. It provides a large platform of technology-enabled services to clients engaged in clinical research. These services include, but are not limited to, managing the medical imaging process throughout clinical trials.

9. BioClinica's clients include pharmaceutical and biotechnology organizations across the globe.

10. Defendant Imaging Endpoints provides competitive services to pharmaceutical and biotechnology companies.

11. BioClinica's key offerings include: Medical Imaging; Cardiac Safety; Clinical Adjudication; Randomization & Trial Supply Management and Optimization; Electronic and eSource Data Capture; Site Payments and Forecasting; Pharmacovigilance; and Clinical Trial Management.

12. Regarding Medical Imaging, BioClinica offers analysis and consultation to help clients track the effectiveness of new drugs and medical devices across major therapeutic areas, including oncology, neurology, musculoskeletal, and cardiology. In doing so, BioClinica relies heavily on proprietary documents, including templates and forms, that its Medical Communications Department create. These proprietary documents, which include, but are not limited to, imaging charters and response protocol templates are not otherwise available in the marketplace and are extremely valuable to persons or entities desiring to provide similar imaging-related services for clinical trials.

13. BioClinica also provides software solutions and consulting services that use BioClinica proprietary software to improve the efficiency and management of the drug development process.

14. BioClinica invests a substantial amount of time and resources on its development of the aforementioned software and clinical study documents (collectively, the "Proprietary Information").

### A. The Former Employee Defendants' Employment With BioClinica

#### 1. *Defendant Catalina Ocolisan*

15. Ms. Ocolisan began her employment with BioClinica in 2012 as an Assistant Clinical Project Manager.

16. As a condition of her BioClinica employment, Ms. Ocolisan executed an Employees Invention Assignment and Confidential Information Agreement ("Confidentiality Agreement") and Non-Competition and Non-Solicitation Agreement ("Non-Compete"). *See* Exhibits 1 and 2.

17. In 2015, BioClinica promoted Ms. Ocolisan to Clinical Project Manager in Medical Imaging.

4

*44573010*

18. From approximately May 2018 until her resignation in March 2019, Ms. Ocolisan held the position of Senior Clinical Project Manager.

19. Senior Clinical Project Managers responsibilities include, but are not limited to: working with client and internal teams to understand the needs of the client and their projects, developing client specific strategies that provide for the highest level of customer satisfaction and delivery of services, establishing multiple tools for obtaining client feedback and gauging client satisfaction, and client requests and concerns.

20. Senior Clinical Project Managers also have business development responsibilities, including, but not limited to: collaborating with business development directors in the development and presentation of company capabilities calls/meetings, attending professional meetings as a BioClinica representative, and delivering presentations projecting solid comprehension of project/protocol and BioClinica services to clients and potential clients.

21. As a Clinical Project Manager and Senior Clinical Project Manager, Defendant Ocolisan worked directly with BioClinica's clients and internal team members to understand the needs of the clients throughout BioClinica serviced studies. This included, but was not limited to, evaluating the budget for each client and directing sensitive communications to clients to ensure customer satisfaction.

22. Defendant Ocolisan's client-facing position allowed her to develop strong relationships with many of BioClinica's client contacts, including one of BioClinica's largest multi-million dollar clients. For example, Ms. Ocolisan emailed clients daily and participated in weekly telephone meetings with this key client.

23. In addition, Ms. Ocolisan had access to and is intimately familiar with BioClinica's Proprietary Information. By way of example, Ms. Ocolisan created and worked with proprietary study project plans and documents to assist with configuration of BioClinica medical imaging software applications that are not shared in the market place.

5

24. Upon information and belief, upon resigning from BioClinica, Ms. Ocolisan assumed the position of Associate Director of Imaging Operations for Imaging Endpoints.

25. Upon information and belief, Ms. Ocolisan is performing nearly identical functions and has the same job responsibilities that she did with BioClinica.

26. Further, in January 2019, Ms. Ocolisan was directly involved in the unsuccessful recruitment and solicitation of a current BioClinica employee on behalf of Imaging Endpoints.

2. *Defendant Ami Marano*

27. On November 10, 2017, BioClinica offered Ms. Marano a position as Clinical Project Manager.

28. Ms. Marano held the position of Clinical Project Manager from approximately November 2017 until she resigned from BioClinica in December 2018.

29. As a condition of her employment as Clinical Project Manager, Ms. Marano executed a Confidential Agreement and Non-Compete Agreement with BioClinica. *See* Exhibits 3 and 4.

30. Clinical Project Managers primary responsibilities include, but are not limited to: reviewing study requirements and response assessment criteria and collaborates with key stakeholders to develop study start-up activities and associated documents, refining project plans (i.e. timelines, milestones and limitations for project staff), establishing project reporting schedules, providing project updates to business development directors and clients, and communicating timely, appropriate project information to project teams, sites and client representatives.

31. As a Clinical Project Manager, Ms. Marano worked directly with BioClinica's clients and internal team members to understand the needs of the clients throughout BioClinica serviced studies. This included but was not limited to evaluating the budget for each client and directing sensitive communications to clients to ensure

6

customer satisfaction. This client facing position allowed Ms. Marano to develop strong relationships with many of BioClinica's client contacts.

32. In addition, Ms. Marano had access to and was intimately familiar with BioClinica's Proprietary Information.

33. Upon information and belief, following her resignation from BioClinica, Ms. Marano assumed a role as a Project Manager with Imaging Endpoints.

34. Upon information and belief, Ms. Marano is performing nearly identical functions and has the same job responsibilities that she did with BioClinica.

**B. BioClinica's Efforts to Protect its Trade Secrets and Confidential Information**

35. Both Former Employee Defendants executed a Confidentiality Agreement with BioClinica.

36. Section 4 of the Confidentiality Agreement provides:

> <u>Protection of Confidential Information of the Company</u>. I understand that my work as an employee of the Company creates a relationship of trust and confidence between myself and the Company. During and after the period of my employment with the Company, I will not use or disclose or allow anyone else to use or disclose and "Confidential Information" (as defined below) relating to the Company, its products, suppliers or customers except as may be necessary in the performance of my work for the Company or as may be authorized in advance by appropriate officers of the Company. "Confidential Information" shall include innovations, business strategies, financial information, forecasts, personnel information, customer lists, trade secrets and any other non-public technical or business information, whether in writing or given to me orally, which I know or have reason to know the Company would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesirable publicity. I will keep Confidential Information secret and will not allow any unauthorized use of the same, whether or not any document containing it is marked as confidential. These restrictions, however, will not apply to Confidential Information that has become known to the public generally through no fault or breach of mine or that the Company regularly gives to third parties without restriction on

7

*44573010*

use or disclosure. Upon termination of my work with the Company, I will promptly deliver to the Company all documents and materials of any nature pertaining to my work with the Company and I will not take with me any documents or materials or copies thereof containing any Confidential Information.

37. Section 10 provides that Pennsylvania law governs the Confidentiality Agreement.

38. Both Former Employee Defendants executed a Non-Compete Agreement with BioClinica.

39. Section 2 of the Non-Compete Agreements provides:

> <u>Non Competition.</u> During the period of my employment with the Company and for a period of one (1) year thereafter, I will not, either for myself or any other person or entity, directly or indirectly carry on or engage in any business competitive with that of the Company as of the date of termination of my employment by the Company in any state or commonwealth of the United States or any country of the world in which the Company or any affiliate of the Company carries on or engages in the business of the Company. The business of the Company for these purposes shall include, without limitation, such specific technologies or products in which the Company shall, during the period of my employment, have initiated significant plans to develop. Carrying on or engaging in business on my part shall include the following activities: engaging in, working with, having an interest or concern in, advising, lending money to, guaranteeing the debts or obligations of, or permitting one's name to be used in connection with, an enterprise or endeavor, either individually, in partnership or in conjunction with any person or persons, firms, associations, companies or corporations, whether as a principal, agent, shareholder, employee, officer, director, partner, consultant or in any manner whatsoever (it is being understood that I will retain the right to invest in or have an interest in entities traded on any public market or offered by any national brokerage house, provided that such interest does not exceed five percent (5%) of the voting control of that entity).
>
> <u>Non-Solicitation.</u> During the period of my employment with the Company and for a period of one (1) year thereafter, I will not, either for myself or for any other person or entity, directly or

indirectly (i) solicit, induce or attempt to induce any employee of the Company or of any affiliate of the Company to terminate his or her employment with the Company or such affiliate or (ii) solicit or contact any customer or potential customer of the Company or any affiliate of the Company.

40. Section 5 provides that Pennsylvania law governs the Non-Compete Agreement.

41. If the Former Defendant Employees had not agreed to the Confidentiality Agreements and Non-Compete Agreements, BioClinica would not have employed them, given them access to its Proprietary Information, or allowed them to trade on BioClinica's goodwill.

42. It is standard practice within BioClinica and Imaging Endpoints' industry to inquire as to whether potential hires have restrictive covenants from their former employers.

### C. Former Employee Defendants' Post-Employment Conduct

43. Defendant Ocolisan, on behalf of Imaging Endpoints, solicited, induced, or attempted to induce current BioClinica employees, including, but not limited to a Senior Clinical Project Manager for BioClinica, to terminate employment with BioClinica and assume employment with Imaging Endpoints.

44. As Associate Director of Imaging Operations of Imaging Endpoints, Defendant Ocolisan is directly competing with BioClinica. Indeed, she is performing the very same responsibilities for Imaging Endpoints that she performed for BioClinica. There is no practical way she can perform her job duties for Imaging Endpoints without relying on her knowledge of BioClinica's confidential and proprietary processes, documents, and Proprietary Information.

45. As a Project Manager for Imaging Endpoints, Defendant Marano is directly competing with BioClinica. Like Ms. Ocolisan, Imaging Endpoints employs Ms. Marano in the same role she held at BioClinica, which will inevitably cause her to rely on and/or disclose BioClinica's Proprietary Information in the course of her Imaging Endpoints employment.

*44573010*

### D. Imaging Endpoints' Knowing Breach of the Former Employee Defendants' Agreements in order to Create a Competitive Advantage and Obtain Confidential and Trade Secret Information

46. As previously stated, both BioClinica and Defendant Imaging Endpoints offer clinical trial resources, including medical imaging services to biotechnical and pharmaceutical companies.

47. On or around June 5, 2018, Defendant Imaging Endpoints hired non-party Elsa Griffith as its Director of Imaging Operations.

48. BioClinica previously employed Ms. Griffith as Director of Medical Imaging from September 2005 to June 2018.

49. Since Ms. Griffith's hire, Defendant Imaging Endpoints has engaged in a targeted campaign to solicit and lure away BioClinica employees, including, but not limited to, the Former Employee Defendants, with the full knowledge that it would be impossible to perform services for Defendant Imaging Endpoints without the Former Employee Defendants' violating restrictive covenants within their Confidentiality and Non-Compete Agreements with BioClinica. In fact, just recently, Jenny Treiber, Manager of Imaging Services, who is subject to her own Restrictive Covenant Agreement, submitted notice of her resignation from BioClinica effective July 26, 2019. Upon information and belief, Ms. Treiber is resigning in order to assume employment with Defendant Imaging Endpoints.

50. According to a current BioClinica Senior Clinical Project Manager, Defendant Imaging Endpoints recruited her to perform a clinical project management role that was essentially the same as her job at BioClinica. In fact, former BioClinica employees who are now working at Imaging Endpoints, including Ms. Ocolisan, interviewed this current BioClinica employee for Imaging Endpoints.

51. By soliciting and ultimately hiring, BioClinica's former Medical Writers and former Clinical Project managers, Defendant Imaging Endpoints has positioned itself to benefit from BioClinica's Proprietary Information and good will, all in violation of known contractual obligations.

*44573010*

52. Although BioClinica cannot presently calculate the precise value of the harm caused by Defendants' actions in contravention of their legal and contractual obligations, it clearly exceeds $75,000.00.

## COUNT I
## **BREACH OF CONTRACT**
### (Against Defendant Ocolisan)

53. BioClinica incorporates the averments of the foregoing paragraphs by reference, as if set forth herein.

54. Ms. Ocolisan entered into a Confidentiality Agreement and Non-Compete with BioClinica for good and valuable consideration.

55. Ms. Ocolisan has a duty to abide by the non-solicitation and non-compete provisions in her Non-Compete Agreement.

56. Based on the actions described herein, Ms. Ocolisan breached the terms of her Non-Compete Agreement by directly competing against BioClinica.

57. Based on the actions described herein, Ms. Ocolisan breached the terms of those agreements by soliciting current employees of BioClinica for employment with Imaging Endpoints.

58. There is a real and substantial risk that Ms. Ocolisan has and/or will commit further violations of the agreements unless her conduct is enjoined.

59. As a direct and proximate result of Ms. Ocolisan's wrongful conduct, as described herein, BioClinica has sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

60. In addition to the irreparable injury described above, as a direct and proximate result of Ms. Ocolisan's wrongful conduct, BioClinica has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

11

## COUNT II
## BREACH OF CONTRACT
### (Against Defendant Marano)

61. BioClinica incorporates the averments of the foregoing paragraphs by reference, as if set forth herein.

62. Ms. Marano entered into a Confidentiality Agreement and Non-Compete Agreement with BioClinica.

63. Ms. Marano has a duty to abide by the non-solicitation and non-compete provisions in her Non-Compete Agreement.

64. Based on the actions described herein, Ms. Marano breached the terms of her Non-Compete Agreement by directly competing against BioClinica.

65. There is a real and substantial risk that Ms. Marano has and/or will commit further violations of the agreements unless her conduct is enjoined.

66. As a direct and proximate result of Ms. Marano's wrongful conduct BioClinica has sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

67. In addition to the irreparable injury described above, as a direct and proximate result of Ms. Marano's wrongful conduct, BioClinica has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against Defendant Imaging Endpoints)

68. BioClinica incorporates the averments of the foregoing paragraphs by reference, as if set forth herein.

69. Defendant Imaging Endpoints has repeatedly tortiously interfered with BioClinica's contractual relationship with the Former Employee Defendants.

*44573010*

70. The Restrictive Covenant Agreements each required that Former Employee Defendants disclose to Imaging Defendant Endpoints the restrictions within their agreements.

71. Despite this, Defendant Imaging Endpoints has targeted numerous BioClinica employees to work in positions that require the Former Employee Defendants to assist in providing services that compete directly with BioClinica.

72. Upon information and belief, Defendant Imaging Endpoints' conduct has been willful, malicious and undertaken with reckless indifference to the rights of BioClinica.

73. There is a real and substantial risk that the Defendant Imaging Endpoints has or will commit further violations of the Restrictive Covenant Agreements unless this Court enjoins its conduct.

74. As a direct and proximate result of the Defendant Imaging Endpoints' wrongful conduct described herein, BioClinica has sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

75. In addition to the irreparable injury described above, as a direct and proximate result of the Defendant Imaging Endpoints' wrongful conduct, BioClinica has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## COUNT IV
## UNFAIR COMPETITION
### (Against Defendant Imaging Endpoints)

76. BioClinica incorporates the averments of the foregoing paragraphs by reference, as if set forth herein.

77. Defendant Imaging Endpoints organized a scheme to raid BioClinica's employees as a means to acquire, improperly and illegally, BioClinica's work force, its Proprietary Information, and its goodwill.

*44573010*

78. Pursuant to the aforementioned scheme, Imaging Endpoints undertook a concerted campaign to solicit and hire BioClinica employees for the unlawful and improper purpose of harming BioClinica so that Defendant Imaging Endpoints could unfairly compete against BioClinica.

79. Pursuant to Defendant Imaging Endpoints' scheme, the solicitation of BioClinica's employees occurred through unlawful and improper means.

80. Due to Defendant Imaging Endpoints' unlawful raiding of BioClinica's employees, BioClinica has been injured, and BioClinica is threatened with losing customers, additional employees, its competitive advantage, and goodwill in amounts to be determined at trial.

## COUNT V
## <u>INJUNCTIVE RELIEF TO ENJOIN THREATENED MISAPPROPRIATION AND/OR INEVITABLE DISCLOSURE OF PROPRIETARY INFORMATION</u>
### (Against All Defendants)

81. BioClinica incorporates the averments of the foregoing paragraphs by reference, as if set forth herein.

82. BioClinica created, composed, and developed the Proprietary Information at great expense, and the Proprietary Information has independent economic value, which is derived from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

83. The Proprietary Information is the subject of reasonable efforts to maintain its secrecy, including, but not limited to, the Restrictive Covenant Agreements.

84. In Ms. Ocolisan's current capacity as Associate Director of Imaging Operations of Imaging Endpoints, it is inevitable that she has or will disclose and/or use the Proprietary Information for Defendant Imaging Endpoints' benefit.

85. In Ms. Marano's current capacity as a Project Manager for Defendant Imaging Endpoints, it is inevitable that she will disclose and/or use the Proprietary Information for Defendant Imaging Endpoints' benefit.

14

*44573010*

86. BioClinica has not consented, either expressly or implicitly, to the Former Employee Defendants' disclosure and/or use of the Proprietary Information on behalf of Defendant Imaging Endpoints.

87. If the Former Employee Defendants and Defendant Imaging Endpoints are not enjoined from using and/or disclosing the Proprietary Information, BioClinica will incur significant damages and irreparable harm, such as the loss of trade secrets, loss of confidential and proprietary information, and injury to its business operation and development.

88. Accordingly, BioClinica is entitled to injunctive relief to prevent actual or threatened misappropriation and/or inevitable disclosure of its Proprietary Information.

## PRAYER FOR RELIEF

**WHEREFORE**, BioClinica demands entry of a judgment against Defendant Imaging Endpoints and the Former Employee Defendants which provides for the following relief:

A. A temporary and preliminary injunction that restrains and enjoins Defendants from concealing, altering, and/or destroying information, documents, or electronically stored data related to the allegations within this Verified Complaint;

B. A temporary, preliminary, and permanent injunction enjoining Defendants from using or disclosing to any person or entity, BioClinica's Proprietary Information, including, but not limited to, documents, templates, forms, and information learned or developed by the Former Employee Defendants while employed by BioClinica;

C. A temporary, preliminary, and permanent injunction enjoining the Former Employee Defendants from soliciting, directly or indirectly, any customers or current employees of BioClinica for a period of one-year commencing on the date of entry of an Order awarding said injunctive relief;

D. A preliminary and permanent injunction enjoining the Former Employee Defendants from working for Defendant Imaging Endpoints, or otherwise engaging in business in competition with

*44573010*

BioClinica for a period of one-year commencing on the date of entry of an Order awarding said injunctive relief;

E.   An award of counsel fees, interest, and costs of suit; and,

F.   For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 25th day of July 2019.

GREENBERG TRAURIG, LLP

By:   */s/ Aaron T. Lloyd*
    Nicole M. Goodwin
    Aaron T. Lloyd

James N. Boudreau (*pro hac vice* application forthcoming)
Justin Victor (*pro hac vice* application forthcoming)

*Attorneys for Plaintiff BioClinica, Inc.*

*44573010*

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on July 25, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

By:  */s/ Tammy Mowen*
Employee, Greenberg Traurig, LLP

*44573010*

## VERIFICATION

Bradley Dean, being of full age, hereby certifies as follows:

1. I am the Senior Vice President ("SVP") of Global Services & Clinical Project Management of BioClinica, Inc., and I am authorized to make this verification on behalf of Plaintiff BioClinica, Inc.

2. The facts stated in the foregoing Verified Complaint are true and correct to the best of my knowledge. This verification is based on my personal knowledge, as well as knowledge and information provided to and obtained by me, in my capacity as the SVP of Global Services & Clinical Project Management.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2019.

Bradley Dean, on behalf of
Plaintiff BioClinica, Inc.